**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben F Fuentes, et al., | No. CV-21-00220-TUC-DCB |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Santa Cruz, et al., | |
| Defendants. | |

After completing discovery, both parties filed dispositive motions. The Plaintiff filed a Motion for Partial Summary Judgment. The Defendants filed an Unenumerated Rule 12(b) Motion to Dismiss and a Rule 56 Motion for Summary Judgment. The Court denies all the motions. This case is ready for trial for the reasons explained below.

<u>Background: Undisputed Relevant Facts.</u>

Plaintiff Ruben Fuentes served as "Captain," working directly under former Santa Cruz County Sheriff Tony Estrada and then Sheriff David Hathaway, who fired him on January 4, 2021. He was the Captain continuously from 2007 until January 8, 2021. Prior to Fuentes obtaining the Captain position, Major Ramon Romo was the "second-in-command" to former Sheriffs Bracamonte and Estrada. Romo was the Deputy Chief, an "at-will" employee. When Fuentes was promoted to Captain, he reported directly to the Sheriff, was the highest-ranking deputy at the Sheriff's Office but unlike Romo, he considered himself a merit-based classified employee.

In 2021, Defendant Hathaway was the elected Sheriff. He assumed the duties as the duly elected Sheriff of Santa Cruz County on January 1, 2021 – the New Year's Day holiday – and January 2 and 3, 2021 which were a Saturday and Sunday.

On Monday morning, January 4, 2021, Sheriff Hathaway met with Captain Fuentes, Lieutenant RJ Rodriquez, and Lieutenant Gerardo Castillo, and informed Fuentes, in writing, that as the newly elected Sheriff he had the right under county policy to designate a second-in-command of his choosing, that the second-in-command position at the Santa Cruz County Sheriff's Office was an "at-will" position under both County and Sheriff's Policy, and that Hathaway was exercising his authority to replace Captain Fuentes with another second-in-command of his choosing. The letter expressly stated that Fuentes' position was "at-will" under the written Santa Cruz County Personnel Policy. The effective date of Fuentes' dismissal from the Captain position was stated in the letter as January 8, 2021. (D Resp. to P MPSJ, Ex. C: Letter (Doc. 31-1) at 71.)

Later that same day, Defendant Sheriff Hathaway took the oath of office. Plaintiff Fuentes worked until the end of the pay period, with his last day of employment being January 8, 2021.

The Santa Cruz Personnel Policy provides that it applies "to all classified and unclassified positions in the County service except as exempted in § 1.04." (D Resp. to P MPSJ, SOF, Ex. D: Personnel Policy § 1.03 (Doc. 31-1) at 75.) Section 1.04(B)(3)(a), Exemptions, provides: "The following shall be exempt from Chapter 9, 12 and 13 of these rules only," and specifically lists all elected officials and various departments, including the Sheriff's Department exemptions for "one Chief Deputy or Associate who is designated either by statute or the Elected Official to act for and perform duties of such elected official." *Id.*

Santa Cruz County affords procedural due process to classified employees who are merit-protected including the right to appeal dismissals to an outside Merit Commission that is separate from the County Board of Supervisors, Elected Officials, and other County directors. Chapter 13, Appeals, provides the right to appeal to the Merit System

Commission for "any classified permanent employee . . . in the following cases: dismissal; suspension without pay, and demotion in rank or compensation due to disciplinary action. *Id.* at 82. "No other appeals shall be granted. Any employee otherwise aggrieved shall follow the procedure stated in Chapter 12 Grievance Procedure in this manual." *Id.*

Section 13.03(A), Method of Appeal, provides "an employee has ten calendar days from the date of receipt of written notice of action taken to file a written notice of appeal with the Personnel Director requesting a hearing before the Commission." Section 13.03(C) provides for "the Personnel Director to determine whether an employee has a right to appeal pursuant to this Policy." *Id.*

Chapter 12, Grievance, provides for settlement of disagreements at the employee/supervisor level, informally, if possible, then formally through each level of supervision, if necessary, with final determination vested in the County Manager. (D MSJ, SOF, Ex. M: Personnel Policy, Chapter 12 (Doc. 41-4) at 33.)

Section 12.02 provides: Any permanent employee of the County, within the Personnel System, shall have the right to grieve any dispute concerning the interpretation or application of Santa Cruz County's Personnel Policy Manual or of written departmental rules and regulations." *Id.* at 33. Arguably, Plaintiff had the right to file a written grievance related to his termination to be reviewed by the Personnel Office, for discussion and the rendering of a decision by the Director of Personnel, and further appeal to the County Manager for review and final determination. *Id.* at 34. However, the Court notes that the Defendants' theory of Plaintiff's at-will employee status is based on his designation as the "one" Chief Deputy or Associate who is designated by the Sheriff to act for and perform duties of such elected official, and § 1.04 expressly exempts him from the grievance provisions in Chapter 12.

Chapter 9, Discipline, requires that a merit-employee subject to dismissal for cause, must be advised of their right to challenge the dismissal through the County appeal process." *Id.* at 28.

It is undisputed that Plaintiff was terminated as an at-will employee. He received written notice of the action (termination), reason for the action (at-will employee), but was not advised of his right to challenge the dismissal through any appeal procedure or to file a grievance. Instead, he was offered a meeting with the Director of Personnel if he had questions and referred to § 1.04(B)(3)(a) of the Personnel Policy for exempt employees. Plaintiff admits that he was offered a meeting with the HR Director of Personnel and the County Manager, which he declined. (D MSJ, SOF, Ex. C: Fuentes Depo. (Doc. 41-2) at 88, 89, 93.)

Due Process: the Law

"The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic without due process of law." (D Resp. P MPSJ (Doc. 30) at 5-6 (citing *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)).

As explained by the Plaintiff in his Motion for Partial Summary Judgment: "To establish a claim for procedural due process violations, a plaintiff must establish that he was not afforded notice or opportunity to be heard before a neutral decision-maker before being deprived of is life, liberty, or property interests Employment is a property interest subject to protection under the federal constitution." (P MPSJ (Doc. 25) at 3 (citing *Roth*, 408 U.S. at 578; *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)). This latter reference is to the Fourteenth Amendment's procedural due process clause as distinguished from substantive due process rights.

"Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (citation omitted). The Constitution protects only "fundamental" rights that are "those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered

liberty, that they are protected [ ]." *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997)). "Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *Id.* The right to employment is not one of them. This is not a substantive due process case.

This is a procedural due process case under the Fourteenth Amendment, which guards against the deprivation of property or liberty without procedural due process. *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Plaintiff has a constitutionally protected property interest in continued employment, only, if he has a reasonable expectation or a legitimate claim of entitlement to it; a mere "unilateral expectation" will not support a due process claim. *Brady v. Gebbie*, 859 F.2d 1543, 1547–48 (9th Cir. 1988) (citing *Roth*, 408 U.S. at 577 (finding under Oregon law, state medical examiner did not have a property interest in continued employment requiring due process before termination where position was unclassified at-will civil service).

To state a claim under the Due Process Clause, the Plaintiff must first establish he possessed a "property interest" that is deserving of the constitutional procedural protections afforded under the Fourteenth Amendment. *Gilbert v. Homar*, 520 U.S. 924, 928 (1997). "Property interests ... are not created by the Constitution. Rather they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. Arizona state law dictates employment is freely severable "unless both the employee and the employer have signed a written contract to the contrary setting forth that the employment relationship shall remain in effect for a specified duration of time or otherwise expressly restricting the right of either party to terminate the employment relationship." A.R.S. § 23-1501. A public employee in an at-will position cannot establish a constitutional property interest and cannot claim any Fourteenth Amendment due process protection. *Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009).

In Arizona it is public policy that "the employment relationship is contractual in nature," with only a specific type of employment contract being sufficient to limit severability. The contract must be signed, expressly restrict the right to terminate employment, or specify a duration. A.R.S. § 23-1501. Absent such a contract, employment in Arizona is at-will. *Id*. Neither party proffers a signed employment contract to support their respective assertions of at-will or protected merit-status employment. Under A.R.S. § 23-1501 an employee handbook may be sufficient to limit severability "if that document expresses the intent that it is a contract of employment." Because there is no assertion otherwise, the Court assumes the Santa Cruz Personnel Policy is such an employee handbook.

Simply put- to prevail, the Plaintiff must establish that he was not an at-will employee; he was a classified employee protected under the Personnel Policy provisions affording due process protections to merit employees, including the appeal rights before the Merit Commission. In this regard, there are material issues of fact in dispute preventing disposition of the case by summary judgment.

From January 1, 1993 to December 31, 2020, Marco Antonio Estrada was the Sheriff. From 1993 to December 15, 2006, he had a Chief Deputy, Romo. It is undisputed that Romo was the second-in-command at the Sheriff's office and an at-will unclassified employee. As Romo entered a retirement program precluding his future employment as a peace officer, sometime around 2006, Sheriff Estrada asked the Board of Supervisors to eliminate the Chief Deputy position and create a civilian position called Executive Assistant to the Sheriff. This was done, and Romo became the Executive Assistant, a civilian position. (D MSJ (Doc. 40) at 3.)

This is in keeping with the Santa Cruz Personnel Policy exempting from the merit-system for the Sheriff's Office: "<u>one</u> Chief Deputy or Associate who is designated either by statute or the Elected Official to act for and perform duties of such elected official." "Estrada now found himself the direct supervisor of his Lieutenant/Division Command staff," and "requested the Board of Supervisors approve a Captain position, which they did

on January 17, 2007." (D MSJ (Doc. 40) at 3-4.) Arguably, in 2007, when Plaintiff became Captain, he could not have been an at-will, unclassified, employee, exempted from the Merit-system because Romo held that "one" exempt position. As Estrada understood it, the Captain position was "not at-will." (D MSJ, SOF, Ex. A: Estrada Depo. (Doc. 41-1) at 66.) Romo left around 2012. The record is not clear as to what happened at that point in time but there is no documentary evidence that the Captain position was formally reclassified to the "one," Chief Deputy or Associate designated by Sheriff Estrada, to act for and perform duties of such elected official. The position of Deputy Chief was not reinstated until after Fuentes was terminated; Defendant Hathaway appointed a Deputy Chief, as an at-will employee. *Id.,* Ex. B: Hathaway Depo. (Doc. 41-1) at 90-91. The description of Captain Fuentes as second-in-command is not dispositive because in law enforcement it can mean a range of things, such as second-in-command on a crime scene, *id.*, Ex. C: Fuentes Depo (Doc. 41-2) at 6, and when Fuentes was not present, then the lieutenant was second in command, *id.*

Plaintiff's Motion for Partial Summary Judgment

Plaintiff proffers several cases which the Court will assume for purposes of the motion to support the Plaintiff's argument that Defendant Sheriff Hathaway lacked the authority to terminate the Plaintiff's employment on the morning of January 4, 2021, because Sheriff Hathaway had not yet been sworn into office.  The Court accepts the position that Arizona statutes and its Constitution require officers and employees to take a loyalty oath before performing the duties of the office or employment.  The Plaintiff asks the Court to find, "as a matter of law that Hathaway had no legal authority to terminate Defendant's employment and was acting outside the scope of his employment." (P MPSJ (Doc. 25) at 5-6.)

The Plaintiff seeks this declaratory relief in the context of a motion for partial summary judgment, therefore, the Court assumes it is aimed at Count One, alleging the Due Process Clause violation. *See* (Complaint ¶ 19 (Doc 1) (alleging "Plaintiff was terminated illegally during an officially called meeting of employees by Defendant

- 7 -

1 Hathaway. He was then acting outside of the scope of his employment as the newly elected
2 Sheriff, as he had not been sworn in at the time he terminated the plaintiff. Yet he
3 represented to the assembled employees and to the Plaintiff that his decision represented
4 official policy and that he had final policymaking authority in the particular issues
5 involved.") Plaintiff does not explain why this alleged violation of Arizona law is
6 dispositive of the due process claim.

Plaintiff presents no case law, and the Court finds none, to support a finding that the statutory and state constitutional provisions requiring "qualification" by taking the oath of office prior to undertaking official duties create a proprietary interest deserving of the procedural due process protections afforded under the Fourteenth Amendment.

The Court agrees with the Defendant that this argument is irrelevant to disposition of the Due Process claim. Plaintiff's rebuttal falls short that this case "challeng[es] Hathaway's authority to terminate him at the time of the termination." (Reply (Doc. 33) at 10.) No so, Count One challenges the termination as a violation of the Fourteenth Amendment's Due Process Clause. As noted above, there is a material question of fact precluding summary judgment as to the Due Process claim.[1]

In response to the Motion for Partial Summary Judgment, Defendant Hathaway seeks qualified immunity. The Plaintiff responds that "[q]ualified immunity would not attach to Defendant Hathaway because he wasn't the Sheriff when he terminated Fuente's employment because he had not yet qualified for the Office of the Santa Cruz County Sheriff." (Reply (Doc. 33) at 10.) Defendant Hathaway seeks summary judgment based on qualified immunity, and the Court addresses it below.

/////

/////

/////

/////+

---

[1] Th7\40
-e other counts, interference with employment interest, breach of employment contract, and breach of the covenant of good faith and fair dealing, were dismissed by joint motion. (Order (Doc. 35)).

<u>Defendants' Unenumerated Rule 12(b) Motion to Dismiss for Lack of Jurisdiction and Rule 56 Motion for Summary Judgment.</u>

Exhaustion:

Defendants seek dismissal of the action due to lack of jurisdiction because the Plaintiff failed to exhaust administrative remedies. Defendants seek summary judgment because Plaintiff was an at-will employee without any right to due process; even if he was a merit-protected employee, he declined an offered pretermination opportunity to be heard and an available post-termination merit appeal, thereby, precluding his due process claim. Defendant Sheriff Hathaway seeks summary judgment based on qualified immunity. Finally, Defendants assert damages should be limited based on after-acquired evidence reflecting cause for his termination and/or damages cannot exceed a $1.00 nominal amount because Defendants did not cause Plaintiff to forego post-termination process to prove his claim that he was not an at-will employee and seek reinstatement and back pay.

Defendants present no case law, and the Court finds none, to suggest exhaustion is a jurisdiction prerequisite to bringing this action. Any exhaustion requirement, here, is a prudential requirement. *Cf., Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001) (explaining prudential requirement that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241). Where exhaustion requitement is judicially created, a failure to exhaust does not deprive a federal court of jurisdiction. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds, *Reno v. Koray*, 515 U.S. 50, 54-55 (1995). Where exhaustion is not a "'jurisdictional prerequisite,'" it is subject to waiver. *Castro-Cortez*, 239 F.3d at 1047).

The Court rejects Plaintiff's assertion that Defendants' exhaustion argument was waived because it was not raised as a Rule 12(b) motion prior to filing a responsive pleading. Defendants timely raised it as an affirmative defense in the Answer. See (Answer Para. 11 (Doc. 7) at 20.) Exhaustion is properly presented in a motion for summary judgment within the framework of Federal Rules of Civil Procedure, rather than an "unenumerated" rule. *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2013). Defendant has the

burden to plead and prove the defense. *Id.* at 1166. If the Court decides the Plaintiff has exhausted available administrative remedies, or that administrative remedies were not available, or that a failure to exhaust available remedies should be excused, the case may proceed to the merits. *Id.* at 1171.

|Defendants assert that Plaintiff had two avenues of administrative relief, and he declined both. First, he could have disputed his dismissal before the County Human Resources Director and County Manager. Second, believing he was a classified/merit-protected employee, Plaintiff could have appealed his dismissal to the Merit Commission, which is an independent, impartial body with the power to reinstate an employee with back pay. "If the Merit Commission had accepted Fuentes' position that he was a classified/merit-protected employee even Fuentes can think of no scenario in which he would lose in front of the Commission." *Id.* "This is the very due process that Plaintiffs now claim Ruben Fuentes was entitled to." (D MSJ (Doc. 440) at 7.)

Because Plaintiff failed to exhaust the due process available to him, the Defendant submits that this Court should grant summary judgment and not reach the merits of the constitutional claim. Applying the burden shifting standard for testing exhaustion in this case, the Defendant must show there were available administrative remedies. Then, the burden shifts to Plaintiff to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. The Plaintiff can rebut the assertion of failure to exhaust "by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Hilao v. Est. of Marcos*, 103 F.3d 767, 778 (9th Cir. 1996). The ultimate burden of proof remains on the Defendant, with the Court determining whether to excuse the alleged faulty exhaustion and reach the merits.

As for the first avenue of administrative relief, the Plaintiff attests he believed it was futile to meet with the Human Resource Director and County Manager because Defendant Hathaway told him the determination that he was an at-will employee was made by them. The second avenue of administrative relief, a grievance and appeal with the Merit

Commission, is clearly contrary to the Personnel Policy that expressly provides less or more due process depending on whether an employee is classified or not, with only classified, i.e., merit-based, employees entitled to an appeal and hearing before the non-biased outside Merit Commission. This is the process sought by the Plaintiff.

The Court finds the Plaintiff did not fail to exhaust his administrative remedies because the Defendant has not established either of the two avenues were available to him. Defendant did not provide notice to the Plaintiff advising him of any appeal rights. Instead, Defendants referred him to § 1.04(B)(3)(a), which expressly exempted him from coverage under Chapters 9, 12 and 13 of the Personnel Policy. Under such circumstances, it is arguable that Plaintiff would have understood requesting review of his dismissal, either through the grievance provisions in Chapter 12 or filing an appeal to the Merit Commission under Chapter 13 would have been obviously futile.

The Court rejects Defendants' request to grant summary judgment for failure to exhaust administrative remedies. The Court finds the due process claim will proceed on the merits. The Court, accordingly, addresses Defendant Hathaway's argument that he is entitled to qualified immunity, and Defendants' assertions to limit damages.

## Qualified Immunity

Qualified immunity protects police officers from individual liability under 42 U.S.C. § 1983 for a constitutional violation unless the legal right was "clearly established" at the time, and a reasonable person in the same position would have known that what he did violated that right. *Behrens v. Pelletier*, 516 U.S. 299, 304 (1996); *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996); *Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996); *Act Up/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993). Qualified immunity is designed to protect an officer who, reasonably, but mistakenly, acts in violation of some constitutional right. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). It "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224 (1991); *see also Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The doctrine bars the suit; it is not a defense to liability. *Act Up/Portland*, 988 F.2d at 872-73. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Plaintiff bears the burden to prove both the merits of his constitutional claim and that the constitutional right was clearly established, *Davis v. Scherer,* 468 U.S. 183, 197 (1984), with this latter analysis being an individualized analysis of constitutional behavior, *Cunningham v. Gates,* 229 F.3d 1271, 1282(9th Cir. 2000). To support an assertion that a right is clearly established, the Plaintiff must "identify a case where an officer acting under similar circumstances as [the Defendant] was held to have violated the Fourth Amendment." *Shafer v. County of Santa Barbara* 868 F.3d 1110, 9th Cir. 2017). Then, the Court can conclude that the right "is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (emphasis added)). Qualified immunity is a legal question, and it is addressed by the Court at the earliest possible point in the litigation.

Here, the Plaintiff fails in its opposition to qualified immunity for Defendant Hathaway. Plaintiff argues that qualified immunity doesn't protect Defendant Hathaway because he acted outside the scope of his employment when he terminated the Plaintiff on the morning of the January 4, 2021, a few hours before he took the oath of office and, thereby, qualified as the Santa Cruz County Sheriff. The letter Defendant Hathaway handed to the Plaintiff clearly said the termination was effective on January 8, 2023, which was after the oath was administered. The record also reflects considerable back and forth communications between Defendant and Plaintiff during the week regarding options that Plaintiff considered and declined, resulting in his last date of service being January 8. The Court finds that Defendant Hathaway was acting as the *de facto* Sheriff on the morning of January 4, 2021, if tendering the letter has any evidentiary significance to the act of terminating Plaintiff's employment which was effective on January 8. The Plaintiff offers no case law to support any assertion that qualified immunity would not support an official acting *de facto.*

The Court has already found the allegation that Defendant Hathaway acted without authorization on the morning of the 4th is not relevant to determining the merits of the due process claim, and now finds it is not relevant to defeat qualified immunity. Instead, for the purpose of deciding qualified immunity, the Court assumes that if a jury finds for Plaintiff on the merits of his due process claim, the Plaintiff fails to prove that his constitutional rights were clearly established. Here, "Defendant Hathaway consulted with County Manager Jennifer St. John and Human Resources Manager who confirmed that under SCC Personnel Policy 1.04.B.3(a) and Sheriff's Policy 200.3.1, Plaintiff Fuentes was exempt from Chapters 9, 12, and 13 of the Personnel Policies and, thus, was an "at-will" employee." (D MSJ (Doc. 40) at 5 (citing D SOF 34)). There is no evidence that Defendant Hathaway knew or should have known the Plaintiff was a protected merit-employee, contrary to information obtained from them. Plaintiff told Defendant Hathaway that he understood his position, Captain, was a classified merit protected position. Beyond this, the Plaintiff does not present evidence he proffered to Sheriff Hathaway, if any, to persuade him that he was merit-protected.

The Plaintiff offers no cases to support a conclusion that failing to investigate or establish an at-will employee's status prior to dismissing him or her without due process violates the Fourteenth Amendment when the employee disputes his or her status as an at-will employee. The Court finds no case which is so similar to these facts from which it can conclude that it is sufficiently clear that every reasonable official in Defendant Hathaway's circumstances would have understood that what he was doing violated the Due Process Clause of the Fourteenth Amendment. The Court grants summary judgment for Defendant Hathaway, individually, based on qualified immunity because it is an immunity designed to protect an officer who, reasonably, but mistakenly, acts in violation of some constitutional right. At most, Sheriff Hathaway was mistaken in his judgment that Plaintiff was an at-will employee; there is no showing that Defendant Hathaway was plainly incompetent or knowingly violated the law. Instead, he sought advice regarding the Plaintiff's employment status from those who should have known.

Damages

Defendants ask the Court to limit Plaintiff's damages based on after-acquired evidence that would have led to termination of Plaintiff's employment for cause. "If an employer can establish that it would have discharged the employee for misconduct it discovered after the wrongful termination, reinstatement and front pay are not appropriate." (D MSJ (Doc. 40) at 16 (citing *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 359-62 (1995)). Here, the Defendants refer to a "scheme to allow SCCSO employees to collect overtime pay for work they did not perform," i.e., SCCSO employees were paid "overtime" for performing duties beyond their paygrade, such as performing duties as a field training officer. The investigation commenced in 2018 when the Santa Cruz County Board of Supervisors reported the alleged misconduct to the Arizona Auditor General. The investigation culminated in a report issued in April 2021, and in June of 2021, the state filed a civil suit against Sheriff Estrada and Plaintiff for racketeering (forgery and theft of public monies illegally paid. The matter was settled with Estrada and Plaintiff each paying $5,000.

The Defendants submit that this is "sufficient evidence that no reasonable jury could conclude that Sheriff Hathaway would have had any other choice than to terminate Fuentes." *Id.* at 17. Because the Defendants new of the conduct by 2018 when the Board of Supervisors requested the investigation by the Arizona Auditor General, a reasonable jury could conclude that Defendants, Santa Cruz County and Sheriff Hathaway in his official capacity, did not discover the wrongful conduct after Plaintiff's termination.

For the reasons above that the Court denied summary judgment for failure to exhaust administrative remedies, the Court denies Defendants' request to limit monetary damages to not exceed the nominal amount of $1.00. There is a question of fact which the jury must determine as to whether Defendants caused the alleged constitutional deprivation because the letter told the Plaintiff he was being terminated as an at-will employee and referred him to the Personnel Policy, § 1.04(B)(3)(a), Exemptions, from coverage under Chapters 9, 12

and 13, which are the due process provisions the Defendants now assert he could have and should have used if he believed he was a classified employee.

The Court has found material issues of fact exist precluding summary judgment on the merits.

**Accordingly,**

**IT IS ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment (Doc. 25) is DENIED.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 40) is DENIED.

**IT IS FURTHER ORDERED** that within 30 days of the filing date of this Order, the parties shall file the joint proposed Pretrial Order.

Dated this 14th day of March, 2023.

Honorable David C. Bury
United States District Judge