**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Ruben F Fuentes, et al., | No. CV-21-00220-TUC-JGZ |
| Plaintiffs, | **Order Re: Summary Judgment** |
| v. | |
| County of Santa Cruz, et al., | |
| Defendants. | |

In the pending action, Plaintiff Ruben Fuentes alleges Defendants Santa Cruz County and Sheriff David Hathaway violated Fuentes's due process rights by "illegally" terminating him "without good cause" and denying him "an opportunity to be heard" at a "pre-termination meeting or hearing."  (Doc. 1 ¶¶ 17–22; Doc. 57 at 2–3.)  On June 7, 2023, this action was transferred to the undersigned for trial.  (Doc. 51.)  Before transfer, all claims except the due process claim had been dismissed on summary judgment.  (Doc. 47.)

Upon transfer and review of the record, the undersigned called for further briefing and response to Defendants' argument on summary judgment that, assuming Fuentes was a merit-protected employee, he received all the due process to which he was entitled.  (Doc. 53.)  The parties provided additional briefing and the Court heard oral argument on September 21, 2023.  (Doc. 64.)  Having now considered the parties' briefing on summary judgment (Docs. 40, 44, and 46), supplemental briefing (Docs. 55, 60, and 62), and

arguments, the Court will grant summary judgment in favor of Defendants on Plaintiff's due process claim, and vacate the trial currently set for March 4, 2023.

## I. <u>Summary Judgment Standard</u>

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

When the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Id.* In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need only consider the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). Accepting Fuentes's factual allegations as true, the Court concludes that Defendants are entitled to judgment as a matter of law.

## II.     Undisputed Facts[1]

From January 1, 1993 to December 31, 2020, Sheriff Marco Antonio Estrada was the elected Santa Cruz County Sheriff.  (Doc. 57 at 3.)  An Arizona County Sheriff has the ultimate, unilateral authority to hire and fire personnel working for the Sheriff's Office.  (*Id.*)

From January 1, 1993 to December 15, 2006, the Santa Cruz County Sheriff had a Chief Deputy which was a position filled by Major Ramon Romo.  (*Id.*)  At that time, the command staff hierarchy at the Santa Cruz County Sheriff's Office was the Sheriff, followed by the Chief Deputy who was supervised by the Sheriff, and then Sheriff's Lieutenants who were supervised by the Chief Deputy.  (*Id.*)  The Chief Deputy was the second-in-command at the Santa Cruz County Sheriff's Office and was considered an "at-will" employee, meaning he could be dismissed at any time, with or without cause, and with no right to due process or appeal to the County's Merit System Commission ("Commission").  (*Id.*)

Romo entered the Deferred Retirement Option Plan ("DROP") program, which forced his retirement as a sworn law enforcement officer under penalty of losing significant financial benefits.  (*Id.* at 4.)  The forced retirement meant that Romo could no longer work, or be rehired, as a sworn peace officer.  (*Id.*)  As a result of Romo's DROP retirement, then-Sheriff Estrada sought to eliminate the Chief Deputy position and re-hire Romo in a civilian position.  (*Id.*)

On December 13, 2006, the Santa Cruz County Board of Supervisors, in a public meeting, was notified by then-Personnel Director/Deputy County Manager Carlos Rivera that Chief Deputy Romo had filed for the DROP approximately five years prior and, as a consequence, was required to retire or lose a significant amount of money.  (*Id.*)  The Board of Supervisors was also informed by Rivera that Sheriff Estrada had requested the elimination of the Chief Deputy position effective December 15, 2006, and the creation of

---

[1]The facts are taken from the "Stipulations and Uncontested Facts" section of the parties' Amended Joint Proposed Pretrial Order (Doc. 57) and the parties' filings in support of and opposition to Defendants' motion for summary judgment (Doc. 41; Doc. 45).

a civilian Sheriff's Executive Assistant position that would handle all administrative functions of the Sheriff's Office.  (*Id.*)  At the Sheriff's request, the Board of Supervisors eliminated the Chief Deputy position and created a Sheriff's Executive Assistant position, which Romo was hired to fill.  (*Id.*)  After the elimination of the Chief Deputy position, the Sheriff's Office hierarchy changed to the Sheriff directly supervising all Lieutenants.  The Chief Deputy position was never restored during Sheriff Estrada's tenure.  (*Id.*)

After the Chief Deputy position was eliminated, Sheriff Estrada asked the Board of Supervisors to approve a Captain position.  (*Id.*)  On January 17, 2007, in a public meeting of the Board of Supervisors, Rivera reported a "personnel reorganization" at the Sheriff's Office based on the Chief Deputy's retirement under the Public Safety Personnel Retirement system, resulting in the need to promote one of the four Sheriff's Lieutenants to the position of Captain.  (*Id.*)  The Board of Supervisors approved the creation of the Captain position.  (*Id.* at 5.)

On February 5, 2007, then-Executive Assistant Romo delivered a memorandum regarding the Captain position to then-Lieutenant Fuentes, which advised that the Board of Supervisors had authorized Sheriff Estrada to create a new Captain position "that performs administrative and management work" in the uniformed Metro and Detention Divisions of the Sheriff's Office and "[m]ay act as 'Captain in Charge' in the absence of the Sheriff or as delegated."  (*Id.*)  On April 23, 2007, an outside vendor delivered to Romo materials for use in the selection of the Sheriff's Captain.  (*Id.*)

 In May 2007, the Board of Supervisors promulgated a revised version of the Santa Cruz County Personnel Policy ("Personnel Policy"), which specifically exempted from the Discipline, Grievance, and Appeals processes, the Sheriff's single "Chief Deputy or Associate who is designated either by statute or the Elected Official to act for and perform duties of such elected official."  (*Id.*; Doc. 31-1.)

On May 4, 2007, Fuentes was notified that he was being promoted to the rank of

1    Captain and that his immediate supervisor would be Sheriff Estrada.[2]  (Doc. 57 at 4.)

2          On September 19, 2013, Sheriff Estrada promulgated his Sheriff's Office Policy

3    Manual which, among other things, provided that "[t]he Sheriff exercises command over

4    all personnel in the Office.  During planned absences, the Chief Deputy or Captain shall

5    act with the authority of the Sheriff."  (*Id.* at 6.)  At that time, there was no Chief Deputy.

6    (*Id.*)

7          On November 4, 2020, David Hathaway won the general election for Sheriff of

8    Santa Cruz County.  (*Id.*)  Before being sworn into the Office of Sheriff, Hathaway had

9    decided he wanted to designate a new second-in-command, which would involve

10   dismissing Fuentes from the Captain position.  (*Id.*)

11         On January 4, 2021, Hathaway met with the command staff which included Fuentes

12   and two lieutenants.  (Doc. 41 ¶ 36; Doc. 45 ¶ 36.)  At the meeting, Hathaway gave Fuentes

13   a letter of dismissal and explained that the Sheriff had the authority to designate his own

14   "second-in-command," that he had conferred with the County Manager and Human

15   Resources who advised Fuentes's position was "at-will," and that Fuentes was not being

16   terminated for cause.  (Doc. 57 at 6.)  Hathaway also thanked Fuentes for his service to the

17   County.  (Doc. 57; Doc. 41 ¶ 39; Doc. 45 ¶ 39.)  The letter stated that questions about the

18   termination could be directed to Hathaway or the Human Resources Director ("HR

19   Director").  (Doc. 45 ¶ 83.)

20         At the meeting, Fuentes questioned whether he was an at-will employee, and Sheriff

21   Hathaway immediately offered to arrange for Fuentes to meet with the County Manager

22   and the HR Director.  (Doc. 41 ¶ 40; Doc. 45 ¶ 40.[3])  Fuentes agreed to meet, and Hathaway

23

24         [2]It is unknown whether the May 2007 modifications to the Personnel Policy
     occurred before or after Fuentes's May 4, 2007 promotion.

25         [3]Fuentes's partial objections to ¶¶ 40, 41 and 43 of Defendants' Statement of Facts
26   do not create an issue of fact.  Fuentes's testimony establishes that Hathaway offered to set
     up a meeting with the County Manager and the HR Director in response to Fuentes
27   questioning whether he was an at-will employee.  (Doc. 41-2 at 26.)  Fuentes's subjective
     belief that Hathaway offered the meeting solely for the purpose of having the county
28   officials reiterate their position that the Captain position was "at-will" or that the county

arranged the meeting for a date prior to Fuentes's January 8 termination date.  (Doc. 41-2 at 27.)  Fuentes later told Hathaway he did not want to meet with the county officials, and he did not attend the meeting that had been scheduled.  (Doc. 41 ¶ 43; Doc. 41-2 at 29–30; Doc. 45 ¶ 43.[4])

At the time of his termination, Fuentes knew that if he was a merit-protected employee, he could appeal his dismissal to the Commission.  (Doc. 57 at 6.)

Fuentes continued to fulfill his duties as Captain and communicate with the Sheriff on various issues until his January 8 effective dismissal date.  (*Id.*)  After Fuentes's departure, the Captain position was reclassified by the Board of Supervisors as a Chief Deputy position with an "at-will" status.  (*Id.*)

Chapter 13 of the Personnel Policy (Doc. 31-1) provides that merit-protected employees have  the right to appeal dismissals, suspensions, and demotions to the Commission.  (Ch. 13.01.)  The Commission consists of five members who are appointed by the Board of Supervisors but are separate and independent of County Government.  (Ch. 13.02.)  Such an appeal may be brought by a classified permanent employee within ten calendar days from the date of receipt of written notice to action taken.  (Ch. 13.03.)  As part of the hearing, the employee's personnel records are provided to Commission members for review.  (Ch. 13.03(F).)  The employee may appear personally and may also appear with legal counsel.  (Ch. 13.03(G).)  The employee, or counsel, has the right to produce all evidence relevant to the appeal, cross-examine witnesses, and testify on his or

---

officials would reach the same conclusion does not alter the fact that Fuentes was provided an opportunity to be heard regarding his status.

[4]Fuentes partially objects to ¶ 43, on the ground that "the cited transcript from the deposition of Fuentes is unreadable due to transcription errors."  (Doc. 45 ¶ 43.)  This objection does not create a material issue of fact.  First, the transcript is not unreadable. (Doc. 41-2 at 88.)  The cited portions clearly show Fuentes told Hathaway he did not want to participate in the meeting.  (Doc. 41-2 at 29:21–23.)  Second, Fuentes need not rely on the transcript of his own deposition to respond to the Defendants' assertion that Fuentes could have presented his position at a meeting with county officials.  Third, Fuentes's subjective belief that the officials would not reach a different conclusion if there was a meeting does not negate the fact that he could have presented his position at the meeting.

her own behalf.  (*Id.*)  An official record of the proceedings, including recordings of all hearings and testimony, and all exhibits, is prepared.  (Ch. 13.03(H).)  The Commission can reverse the discipline imposed, reduce punishment in certain circumstances, reinstate, and provide full back pay.  (Ch. 13.03(I).)  The Commission's decision must be by majority vote and must include specific findings as to the charges and punishment.  (Ch. 13.03 (I), (J).)  The Commission's findings are subject to judicial review pursuant to Title 12, Chapter 7, Article 6 of the Arizona Revised Statutes.  (Ch. 13.03 (K).)  As of the time of Fuentes's dismissal, the Arizona Superior Court for Santa Cruz County had ruled that the Commission decides its own jurisdiction in cases where there is a dispute over whether the employee's status is classified permanent or "at-will."  (Doc. 57 at 7.)

### III.   Discussion

The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  The Due Process analysis requires two steps: first, a court must determine whether the plaintiff had a protected property interest in his continued employment; second, a court must determine whether, in being deprived of that property interest, the plaintiff received all the process that was due.  *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 331 (9th Cir. 1995).

Although the parties stipulate to the facts, the parties dispute whether those facts establish that Fuentes was an at-will employee or a merit-protected employee.  As a merit-protected employee, Fuentes would have a protected property interest in his continued employment. As an at-will employee, he would not, and his claim would fail.  For purposes of summary judgment, the Court must accept as true Fuentes's assertion that he was a merit-protected employee when he was terminated.  Thus, the sole remaining issue to be determined is whether, in being deprived of his property interest in his continued employment, Fuentes received all the process that was due.  *See Clements*, 69 F.3d at 331.  For the reasons that follow, the Court concludes as a matter of law that Fuentes did receive

all the process that he was due and, based on the undisputed evidence, no jury could reasonably find in favor of Fuentes.

### A. Pre-Termination Due Process

A public employee who can only be terminated for cause is entitled to a pre-termination "hearing" of some kind, *Loudermill*, 470 U.S. at 545, and though it "need not be elaborate," the pre-termination hearing "must be afforded the employee prior to termination," *Clements*, 69 F.3d at 331–32. "The essential requirements of this pre-termination process are notice and an opportunity to respond." *Id.* at 332. This is because a pre-termination hearing "should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545–46 (citing *Bell v. Burson*, 402 U.S. 535 (1971)).

The record shows that Fuentes was afforded notice and an opportunity to respond prior to the effective date of his termination. At the January 4, 2021 meeting, Sheriff Hathaway gave Fuentes a written notice of dismissal and told Fuentes that the County Manager and HR Director had advised that Fuentes's position was at-will and Fuentes was not being terminated for cause. When Fuentes questioned whether he was at-will, Hathaway offered to arrange for Fuentes to meet with the County Manager and HR Director. Hathaway then arranged for a meeting for a date prior to Fuentes's January 8 termination date. Fuentes later elected not to attend the meeting. Thus, there is no genuine dispute that Fuentes was provided notice of his termination at the January 4 meeting and that he was given a pre-termination opportunity to be heard regarding his classification as an at-will employee and, therefore, his termination.

Fuentes argues that the offer of a meeting with county officials was insufficient to satisfy due process because he was not provided "an opportunity to be heard by the final decisionmaker," who was Hathaway. (Doc. 55 at 4.) A meeting with the final decisionmaker, however, is not required to satisfy due process. *See Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 891–92 (9th Cir. 1990). In *Gates*, the Ninth

Circuit concluded there was no due process violation when the plaintiff was given a meeting with his commanding officer, but not the police chief, before being suspended from duty. *Id.* at 891–92. The court found the Sixth Circuit's construction of *Loudermill*, 470 U.S. at 546, on remand, persuasive and agreed with the Sixth Circuit's conclusion that "[w]hile it might be tempting to make this test harder and require that a meeting be with the one actually empowered with the authority to fire, the courts have not construed procedural due process to merit such a requirement." *Id.* at 891 (quoting *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 311 (6th Cir. 1988)). The Ninth Circuit stated that requiring a meeting with the final decisionmaker "would require that the head of a department, no matter how large that department was, [to] be forced to meet with every employee who was to be subjected to discipline. That might be a nice luxury, and it might even work if this were the best of all possible worlds. It may even be a desideratum. It is not, however, a constitutional imperative." *Id.*

Fuentes also argues that the opportunity to raise his employment dispute before the County Manager and HR Director was insufficient to satisfy the requirements of due process because the county officials were biased, and the chance of a different result was "futile." (Doc. 44 at 11; Doc. 55 at 8.) Fuentes reasons that the county officials were "the very same people who crafted the letter purporting to terminate Fuentes's employment and informing he was 'at will.'" (*Id.*) However, Fuentes's suggestion that a pre-termination opportunity to be heard must be conducted by uninvolved or disinterested decisionmakers is not supported by law. [5] Because a "pre-termination hearing involves only notice and an opportunity to respond, and does not constitute an 'adjudication,'" "the decisionmaker in a pre-termination hearing need not be impartial, so long as an impartial decisionmaker is provided at the post-termination hearing." *Clements*, 69 F.3d at 333, n.15 (citing *Walker*

---

[5] The fact that the Sheriff consulted with the County Manager and HR Director as part of his decision-making does not, in and of itself, warrant the conclusion that the County Manager and HR Director are biased. Fuentes offers no evidence of actual or potential bias, such as evidence of a pecuniary interest in the proceeding, personal animosity toward the plaintiff, or improper prejudgment of his claim.

*v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir. 1991)). As discussed below, Fuentes had the opportunity post-termination to appeal to the Commission, which is staffed by impartial decisionmakers, and for further appeal of a decision by the Commission to the superior court. Thus, Fuentes's opportunity to meet with county officials was sufficient pre-termination process. Such a meeting would have provided an initial check against a mistaken decision as to the classification of Fuentes's position and the decision to terminate him.[6]

### B. Post-Termination Due Process

"Although the denial of a pre-termination hearing is a constitutional violation sufficient to support damages, [the Court] must also independently assess the adequacy of the post-termination proceedings." *Clements*, 69 F.3d at 332. "[T]he required extent of post-termination procedures is inextricably intertwined with the scope of pre-termination procedures, *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985), and "the inadequacy of post-termination process may itself be the source of a distinct due process violation," *Clements*, 69 F.3d at 332. When the pre-termination hearing is abbreviated, the post-termination hearing must be "substantially more meaningful." *Rodgers v. 36th Dist. Court*, 529 Fed. Appx. 642, 649 (6th Cir. 2013) (internal citation omitted). "At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him." *Carter*, 767 F.2d at 273. "Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the

---

[6]In light of the fullness of Santa Cruz County's post-termination procedures, the meeting with Hathaway on January 4 may have also constituted a sufficient pre-termination opportunity to be heard. *See Montgomery v. City of Ardmore,* 365 F.3d 926, 937 (10th Cir. 2004); *see also Powell v. Mikulecky,* 891 F.2d 1454, 1460 (10th Cir. 1989) (noting three other circuit courts had interpreted *Loudermill* to permit abbreviated pretermination hearings, including brief face-to-face meetings).

1   employee has received all the process due under the Constitution."  *Rodgers*, 529 Fed.

2   Appx. at 649 (quoting *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004)).

3       The County's post-termination appeal process, outlined in Chapter 13 of the

4   Personnel Policy, provides for a full post-termination hearing that comports with the

5   requirements of due process.  Under the County policy, an employee has the opportunity

6   to attend a hearing conducted by a neutral decisionmaker (the Commission), have the

7   assistance of counsel, call witnesses, produce evidence, and challenge the evidence against

8   him.  (Doc. 31-1 at 82–84.) Fuentes testified at his deposition that he knew about the

9   process, but he did not use it.  Yet, if he had, he could have been heard by the Commission,

10  had the assistance of counsel, called witnesses, offered evidence as to the proper

11  classification of his position, and challenged the County's evidence as to his position.

12  Because this full post-termination hearing was available to Fuentes, and because pre-

13  termination notice and a right of reply hearing with the County Manager and HR Director

14  were provided to him, Fuentes received all the process due to him under the Constitution.

15  *See Rodgers*, 529 Fed. Appx. at 649.

16      Fuentes argues he was not required to attempt to use the County's appeal process

17  because Defendants "specifically" and "repeatedly" told him that he was an at-will

18  employee and was not entitled to an appeal, so it would have been futile for him to try to

19  use the process.  (Doc. 55 at 5–7; Doc. 62 at 6.)  Importantly, Fuentes provides no evidence

20  that anyone told him that he did not have access to the appeal process or that he had no

21  appeal rights. The undisputed facts establish that the parties disagreed as to whether

22  Fuentes's position was protected; under County policy, employees in protected positions

23  can appeal adverse employment decisions to the Merit Commission[7]; Fuentes thought his

24

25      [7]Fuentes does not suggest that the Commission would have adjudicated his appeal
    in bad faith, dishonestly, or without integrity.  *See Head v. Chicago Sch. Reform Bd. of*
26  *Trustees*, 225 F.3d 794, 804 (7th Cir. 2000) ("Those serving as adjudicators are presumed
    to act in good faith, honestly, and with integrity.  To overcome this presumption, a plaintiff
27  must come forward with substantial evidence of actual or potential bias, such as evidence
    of a pecuniary interest in the proceeding, personal animosity toward the plaintiff, or actual
28  prejudgment of the plaintiff's case." (internal citation omitted)).

1   position was merit-protected; he knew that if he was a merit-protected employee, he could

2   appeal his termination to the Commission; and he chose not to do so.  Fuentes did not lose

3   access to the appeal process when (or because) officials told him he was an at-will

4   employee.  Fuentes clearly disputed that classification, believed that he was merit-protected

5   and knew that merit-protected employees had appeal rights through the Commission. *See*

6   *Krentz v. Robertson*, 228 F.3d 897, 904 (8th Cir. 2000) (summarizing circuit case law

7   holding that employees waive procedural due process claims when they are aware of

8   available administrative procedures, yet fail to pursue relief under the procedures); *see also*

9   *Booker v. City of Saint Paul,* 762 F.3d 730, 736–37 (8th Cir. 2014) (concluding the state

10  does not violate due process requirements "when it has made procedural protection

11  available and the plaintiff has simply refused to avail himself of [the procedures]" (cleaned

12  up)).

13              **C. Reclassification of Fuentes's Position**

14          Recognizing that his due process claim fails if his position was at-will, Fuentes

15  claims that the deprivation at issue in this lawsuit resulted from the County's

16  reclassification of his position from merit-protected to at-will.  Fuentes asserts that there is

17  a genuine dispute of material fact as to whether the County violated his procedural due

18  process rights when it unilaterally stripped him of his protected status, without notice or

19  authority, and redesignated him as "at-will" and terminated him, thereby depriving him of

20  access to the procedural framework only protected employees enjoy.  (Doc. 55 at 7; Doc.

21  62 at 3–4.)  This claim, however, is not a claim that has been pursued in this litigation.  The

22  claim is not included in the parties' Amended Joint Proposed Pretrial Order (Doc. 57), in

23  which Fuentes describes "Plaintiff's Claim" only as termination of employment without

24  adequate pre-termination procedural protections, or alternatively, adequate post-

25  termination procedural protections.  (*Id.* at 2-3.)  It is too late to amend his claim now.  *See*

26  *Hartzell v. Marana Unified Sch. Dist.*, CV-21-00062-TUC-SHR, 2023 WL 4707064, at *4

27  (D. Ariz. July 24, 2023) (disallowing amendment to due process claim when plaintiff made

28  no indication in joint proposed pretrial order that she would seek to amend her claim and

- 12 -

where case was ready for trial); *Kimble v. Marvel Enterprises, Inc.*, CV 08-372-TUC-DCB, 2010 WL 11515207, at *3 (D. Ariz. Apr. 8, 2010) (finding prejudice because granting leave to amend would involve another wave of discovery and dispositive motions).

## IV.   Conclusion

For the foregoing reasons, the Court concludes Defendants are entitled to judgment as a matter of law.   The record shows that pre-termination, Fuentes was given oral and written notice of his termination, an explanation for the decision to terminate him, and an opportunity to be heard regarding his disagreement with the basis for the decision.   The record also shows that Fuentes knew about the post-termination appeal process in the Personnel Policy and that the post-termination appeal process was sufficient to satisfy due process.

Accordingly,

**IT IS ORDERED**:

(1) **Granting** summary judgment in favor of Defendants.

(2) The jury trial presently set for March 4, 2024 and all related deadlines are **vacated**.

(3) The Clerk of Court shall enter judgment in favor of Defendants and **close this case**.

Dated this 18th day of January, 2024.

Jennifer G. Zipps
United States District Judge